# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 800 | **DATE** | 5/30/2012 |
| **CASE TITLE** | Ironshore Indemnity et al vs. Synergy et al | | |

**DOCKET ENTRY TEXT**

Defendants' motion to dismiss is denied without prejudice and this case is stayed.

■[ For further details see text below.]  Docketing to mail notices.

## STATEMENT

Ironshore Indemnity Company and Ironshore Specialty Insurance Company (together "Ironshore") have sued Synergy Law Group, LLC ("Synergy") and Bartly J. Loethen ("Bart" and together with Synergy, "Defendants") for a declaratory judgment that Ironshore is not required to defend or indemnify Defendants under two insurance policies (the "Policies"). Defendants have moved to dismiss under the "first to file" rule, because Defendants filed a third-party complaint against Ironshore in an ongoing state court action 10 days prior to the filing of this suit. Defendants' motion to dismiss is denied without prejudice and this case is stayed.

**Facts**

For purposes of a motion to dismiss, the facts pleaded in the Complaint are accepted as true. In 2006, Synergy drafted a Shareholders' Agreement for a former client, Gaston Advertising, Inc. ("Gaston"). In 2008, Rena Zito ("Zito"), a shareholder holding 20 shares of Gaston stock, sued Gaston in the Circuit Court of Cook County (the "State Court"), claiming over $1 million under the terms of the Shareholders' Agreement (the "Zito I Lawsuit"). Gaston retained Synergy to defend it, and Synergy appeared on behalf of Gaston in October 2008. Zito moved for summary judgment on February 18, 2010.

On March 26, 2010, Synergy applied for lawyers professional liability insurance with Ironshore. As part of the application for insurance, Synergy responded "No" in answer to the question "Are you or any members of [sic] employees of your firm aware of any fact, circumstance, or situation which might reasonably be expected to give rise to a claim?" The application also gave the following warning: "You must report any known claim, suit, or incident, act or omission that may in the future give rise to a claim or suit, to your current professional liability insurer before the claims-reporting period under that policy expires." In reliance on Synergy's application, Ironshore issued the first of the Policies to Synergy, with a policy period of May 1, 2010 to May 1, 2011 (the "First Policy Period"). The Policy provides coverage for claims first made and reported to Ironshore

**STATEMENT**

during the First Policy Period. Each of the Policies provides:

> "The Insurer shall not be liable to make any payments in connection with any Claim made against the Insured: . . . alleging, arising out of, based upon or attributable to Professional Legal Services if an Insured, prior to the effective date of the first Lawyers Professional Liability Policy issued by the Insurer to the Insured, had knowledge of the circumstances that gave rise to the Claim and reason to believe that a Claim might result."

The term "Professional Legal Services" is defined in part to mean "legal services and activities performed for others as a lawyer."

The Circuit Court granted partial summary judgment to Zito, which was reduced to a money judgment on September 13, 2010 in the amount of $1,267,090. Gaston terminated the services of Synergy.

Synergy made its first demand for coverage from Ironshore via memorandum to its broker dated January 5, 2011, notifying the broker of a potential claim by Gaston against Synergy for malpractice. On January 28, 2011, Ironshore acknowledged receipt of the memorandum and hired counsel to represent Synergy, consistent with its duty to defend, and subject to a full reservation of rights. Following investigation, on April 21, 2011, Ironshore's attorneys issued a letter to Synergy on behalf of Ironshore, stating that Ironshore had no duty to defend or indemnify Synergy with respect to the Gaston issues because Synergy had been aware of the circumstances surrounding Gaston no later than October 2008, when the Zito I Lawsuit was filed. As part of the April 21, 2011 letter, Ironshore advised Synergy that Ironshore was "prepared to file a declaratory judgment action immediately" but that the Policy contained a dispute resolution provision that precluded commencement of a judicial proceeding for 90 days. Ironshore and Defendants participated in mediation on July 19, 2011.

Gaston sued Synergy and Bart for malpractice on September 19, 2011 in State Court (the "Gaston Lawsuit"), alleging that (i) Synergy erred in drafting the Shareholders' Agreement, and (ii) Synergy filed to properly defend Gaston in the Zito I Lawsuit, each resulting in judgment against Gaston in the Zito I Lawsuit. On October 14, 2011, Synergy notified Ironshore of the Gaston Lawsuit. On November 16, 2011, Ironshore's counsel issued a letter on behalf of Ironshore, stating that because the Gaston Lawsuit was related to the Zito I Lawsuit and concerned the same Professional Legal Services, the Gaston Lawsuit and the Zito I Lawsuit were a single Claim that Ironshore had no duty to defend or indemnify.

Following the passage of the 90 day period under the Policy for dispute resolution, the parties entered into an agreed stay until December 15, 2011. The parties did not renew the stay, but Ironshore and the Defendants were in settlement talks at that time, and Ironshore believed the parties were settled in principle and exchanging draft settlement agreements. On December 22, 2011, Zito filed a second suit, this time directly against Synergy and Bart, for aiding and abetting breach of fiduciary duty by Gaston (the "Zito II Lawsuit"). On January 12, 2011, Synergy and Bart made a second demand for coverage from Ironshore. On January 30, 2012, Ironshore notified counsel coverage would be denied, again due to relatedness to the previous claim.

On January 20, 2012, after seeking coverage from Ironshore for the Zito II Lawsuit but before receiving notification of denial, Defendants filed a third-party complaint against Ironshore in the Gaston Lawsuit, alleging breach of contract and bad faith against Ironshore as well as an insurance broker and claims agent associated with the Policies (the "Third Party Complaint"). On February 3, 2012, Ironshore filed the present action. Ironshore has moved to dismiss the Third Party Complaint in State Court, and Defendants move to dismiss the Complaint filed here.

**STATEMENT**

**Discussion**

The Third Party Complaint, filed on January 20, 2012 in Circuit Court, predates the Complaint filed in this Court by thirteen days. Defendants and Ironshore all mistakenly identify the issue before the Court as an application of the "first to file" rule. The "first to file" rule addresses cases simultaneously litigated in two *federal* courts. *See, e.g. Research Automation, Inc. V. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 979 (7th Cir. 2010) (discussing the first to file rule for two identical cases in two federal venues); *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (same); *Pfizer Inc. .v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (first-filed suit accorded deference "when duplicative actions are filed in different federal courts").

In the instant action, the first-filed case has been filed in an Illinois state court. Therefore, the question before this Court involves abstention from simultaneous litigation between federal and state forums under the doctrine of *Colorado River* abstention. The United States Supreme Court directly addressed *Colorado River* abstention as applied to federal declaratory judgment suits in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Known as the *Brillhart/Wilton* doctrine, district courts "may, in the sounds exercise of their discretion, stay or dismiss an action seeking a declaratory judgment in favor of an ongoing state court case." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010) (citing *Wilton*, 515 U.S. at 288; *Brillhart v. Excess Ins. Co.of Am.*, 316 U.S. 491, 494 (1942)). Noting that there is no set criteria for when a court should exercise discretion to abstain, "the classic example of when abstention is proper occurs where. . . solely declaratory relief is sought and parallel state proceedings are ongoing." *Id.* Additionally, abstention under *Brillhart/Wilton* is appropriate "in a diversity case where a declaratory judgment is sought and a parallel state proceeding also exists." *Id.* (citing *Wilton*, 515 U.S. at 283).

The facts before this Court are remarkably similar to those before the Seventh Circuit in *Envision.* The Third Party Complaint and the action before this Court are parallel. The actions are "substantially the same parties. . . contemporaneously litigating substantially the same issues in two fora." *Id.* (citing *Sta-Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 287 (7th Cir. 1996). In *Envision*, as here, the same two parties - an insurer and an insured - litigated the same issues - duty to indemnify - in state court as a substantive action and in federal court as a declaratory judgment action. *See id.* at 986-87.

Like the district court in *Envision*, this Court exercises its discretion to abstain from proceeding with prosecution of the Complaint at this time, in light of the Third Party Complaint. The Court therefore stays this action pending ruling from the State Court as to Ironshore's motion to sever or dismiss, presently pending there. In deciding to stay rather than dismiss the present action, the Court takes note of the contractual provision in the Policies concerning the Policies' governing law. Section O of each of the Policies, titled "Service of Suit," states that both the insurer and insured submit to suit in any court of competent jurisdiction in the United States, provided, that Ironshore retains any and all rights to remove an action to a United States District Court. *See* Complaint, Exhibit E at Section X(O). Taking the facts in the Complaint in the light most favorable to Ironshore, Ironshore's Complaint satisfies the requirements for diversity jurisdiction and is entitled to have its claims heard in the forum of its choosing. However, in the interest of efficient administration of these cases given the already pending motion to dismiss or sever the Third Party Complaint in State Court, the Court will stay this case pending ruling from the State Court on that motion. The parties are directed to apprise this Court at such time as the State Court rules on the motion to dismiss or sever presently pending there, at which time the Court will revisit the stay.