IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IRONSHORE INDEMNITY, INC. and IRONSHORE SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) | 12 CV 800 |
| v. | ) ) ) ) | Judge Virginia M. Kendall |
| SYNERGY LAW GROUP, LLC and BARTLEY J. LOETHEN | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ironshore Indemnity, Inc. and Ironshore Specialty Insurance Company (collectively "Ironshore") filed suit against Synergy Law Group, LLC and Bartley J. Loethen seeking a declaratory judgment that Ironshore is not required to defend or indemnify Defendants under two insurance policies. In February of 2012, Defendants moved to dismiss, arguing that Ironshore's Complaint in federal court should be dismissed under the "first to file" rule in light of a Third-Party Complaint previously filed by Defendants against Ironshore in an ongoing state court action. On May 30, 2012, the Court denied Defendants' Motion to Dismiss without prejudice, but stayed this action pending resolution of Ironshore's Motion to Sever or Dismiss the Third Party Complaint in State Court. The Circuit Court of Cook County has since denied Ironshore's Motion to Sever and has scheduled a hearing on Ironshore's Motion to Dismiss for January of 2013. Based on these developments, this Court lifted its stay in this case on December 17, 2012 in order to determine whether the Court should dismiss this action in favor of the ongoing state court case under the *Colorado River* doctrine. For the reasons stated herein, Ironshore's Complaint for declaratory relief is dismissed.

1

## BACKGROUND

I.      **The Underlying Actions**

In 2006, Synergy drafted a Shareholders' Agreement for one of its former client's, Gaston Advertising, Inc. In 2008, Rena Zito, a shareholder holding 20 percent of Gaston stock, sued Gaston in the Circuit Court of Cook County claiming that she was owed over $1 million under the terms of the Shareholders' Agreement (the "Zito I Lawsuit"). Gaston retained Synergy to defend it in the Zito I Lawsuit and Synergy appeared on behalf of Gaston in October of 2008. Zito moved for summary judgment in February of 2010.

On March 26, 2010, Synergy applied for lawyers' professional liability insurance with Ironshore. As part of the application for insurance, Synergy responded "No" to the question "Are you or any members of [sic] employees of your firm aware of any fact, circumstance, or situation which might reasonably be expected to give rise to a claim?" (*Id.* ¶ 27.) The application also gave the following warning: "You must report any known claim, suit, or incident, act or omission that may in the future give rise to a claim or suit, to your current professional liability insurer before the claims-reporting period under that policy expires." (*Id.* ¶ 28.) In reliance on Synergy's application, Ironshore issued the first of the two policies to Synergy with a policy period from May 1, 2010 to May 1, 2011 (the "First Policy Period"). (*Id.* ¶¶ 30-32.) The policy provided coverage for claims first made and reported to Ironshore during the First Policy Period. (*Id.* ¶ 33.) The policy also provided:

> The insurer shall not be liable to make any payments in connection with any Claim made against any Insured: … alleging, arising out of, based upon or attributable to Professional Legal Services if an Insured, prior to the effective date of the first Lawyers Professional Liability Policy issued by the Insurer to the Insured, had knowledge of the circumstances that gave rise to the Claim and reason to believe that a Claim might result.

(*Id.* ¶ 35.)

On August 9, 2010, the State Court granted summary judgment against Gaston in the Zito I Lawsuit finding Gaston liable on the option to purchase shares at a price *per share* based on the equation contained in the Shareholders' Agreement. (*Id.* ¶ 24.) The court further stated in its Order that it "would be hard pressed to find [Gaston] exercised reasonable care when it erred either by drafting the Shareholder's [sic] Agreement to result in a per-share calculation or in calculating the value owed if it exercised its option to purchase [Zito's] shares." (*Id.* ¶ 25.) On September 13, 2010, the court entered a judgment in favor of Zito and against Gaston in the amount of $1,267,090. (*Id.* ¶ 26.)

On January 5, 2011, Synergy provided a memorandum, drafted by Loethen, to notify Ironshore of a potential claim by Gaston against Synergy for malpractice (the "Synergy Memorandum") (*Id.* ¶ 46.) In that memorandum, Loethen explained the nature of the Gaston situation, describing the professional services provided by Defendants to Gaston from 2006 to 2010, including but not limited to the Shareholders' Agreement, Gaston's attempt to repurchase Zito's shares with Defendants' assistance, Synergy's subsequent involvement with Gaston, and the resulting Zito I Lawsuit. (*Id.* ¶ 47.) On January 28, 2011, Ironshore acknowledged receipt of the Synergy Memorandum and hired counsel to represent Synergy, consistent with its duty to defend, and subject to a full reservation of rights. (*Id.* ¶¶ 48-49.) On April 21, 2011, Ironshore issued a letter to Synergy stating that it had no duty to defend or indemnity Synergy in connection with the potential claim by Gaston because Synergy was aware, no later than October of 2008 when the Zito I Lawsuit was filed, of the circumstances surrounding the Gaston situation and that those circumstances might give rise to a claim. (*Id.* ¶ 50.) Ironshore also advised Synergy that Ironshore was "prepared to file a declaratory judgment action immediately," but

that the policy contained a "Dispute Resolution Clause" that precluded the commencement of judicial proceedings until 90 days after the termination of a non-binding mediation. (*Id.* ¶ 51.) The parties participated in mediation on July 19, 2011 and subsequently entered into a standstill agreement which was effective from October 17, 2011 through December 15, 2011. (*Id.* ¶ 53.)

Meanwhile, on September 19, 2011, Gaston sued Defendants for malpractice in State Court (the "Gaston Lawsuit"), alleging that Synergy erred in drafting the Shareholders' Agreement and failed to properly defend Gaston in the Zito I Lawsuit, each resulting in judgment against Gaston in the Zito I Lawsuit. Synergy notified Ironshore of the Gaston Lawsuit on October 14, 2011. (*Id.* ¶ 54.) On November 16, 2011, Ironshore's counsel issued a letter on behalf of Ironshore stating that because the Gaston Lawsuit involved the same, related, and/or continuous Professional Legal Services and a common nucleus of facts as those described in the Synergy Memorandum and the Zito I Lawsuit, the matters would be considered a single claim that Ironshore had no duty to defend or indemnify. (*Id.* ¶ 55.) On December 22, 2011, Zito filed a second suit, this time directly against Defendants, for aiding and abetting Gaston's breach of fiduciary duty (the "Zito II Lawsuit"). Defendants' counsel notified Ironshore's counsel of the Zito II Lawsuit on January 12, 2012. (*Id.* ¶ 56.) On January 30, 2012, Ironshore's counsel issued a letter on behalf of Ironshore notifying Defendants that coverage would be denied, again due to the lawsuit's relatedness to the Zito I Lawsuit and the Synergy Memorandum. (*Id.* ¶ 57.)

On January 20, 2012, after seeking coverage from Ironshore for the Zito II Lawsuit but before receiving notification of Ironshore's denial, Defendants filed a Third-Party Complaint against Ironshore in the Gaston Lawsuit, alleging breach of contract and bad faith against Ironshore. The Third Party Complaint also asserts claims against Richmond Insurance Group, LLC ("Richmond"), an insurance broker, and Ironshore Insurance Services, LLC, a claims agent,

4

both associated with the Policies. Ironshore filed the present action in federal court thirteen days later on February 3, 2012. Shortly thereafter, Ironshore moved to dismiss or sever the Third Party Complaint in the Gaston Lawsuit and Defendants moved to dismiss Ironshore's Complaint seeking declaratory judgment here.

## II. The Court's Previous Ruling on Defendants' Motion to Dismiss

On May 30, 2012, this Court issued a written Opinion denying Defendants' Motion to Dismiss, without prejudice, and staying the case pending resolution of Ironshore's Motion to Dismiss or Sever Defendants' Third Party Complaint in the Gaston Lawsuit. In that Opinion, the Court noted that the parties had mistakenly identified the issue before the Court as an application of the "first to file" rule, which applies to cases simultaneously litigated in two federal courts. *See* Dkt. No. 21, p. 3. The Court explained that where the first-filed case has been filed in an Illinois state court, the issue of whether to abstain from hearing the federal case falls under the doctrine of *Colorado River* abstention. *Id.* The Court also stated that where, as here, the federal action seeks declaratory relief, courts apply the *Wilton/Brillhart* doctrine to determine whether to stay or dismiss the federal case in favor of parallel litigation in state court. *Id.*

After determining that the Third Party Complaint in the Gaston Lawsuit and the action before this Court were parallel, involving "substantially the same parties … contemporaneously litigating substantially the same issues in two fora," the Court exercised its discretion and abstained from proceeding further with the prosecution of Ironshore's Complaint. *Id.* (quoting *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). Although the Court recognized that it could, "in the sound exercise of [its] discretion, stay *or dismiss* an action seeking a declaratory judgment in favor of an ongoing state case," *Envision*, 604 F.3d at 986 (emphasis added), it decided to stay rather than dismiss the instant case based on a provision

5

in the Policies stating that both the insurer and the insured submit to suit in any court of competent jurisdiction in the United States, provided, that Ironshore retains any and all rights to remove an action to a United States District Court. (*Id.*)

### III. Subsequent Developments in the State Court Proceeding

After issuing its Opinion and staying this case, the Court waited patiently for several months for the State Court to issue a ruling on Ironshore's Motion to Sever or Dismiss the Third Party Complaint. On June 28, 2012, this Court held a status and was informed that the parties were still awaiting a ruling from the State Court, which had "kicked [the case] until mid-August." Based on this representation the Court rescheduled another status for August 23, 2012.

At the August 23 status hearing, Ironshore's counsel appeared before this Court and conveyed that a ruling on its Motion to Sever would be delayed because the judge in the Gaston Lawsuit (Judge Taylor) had been replaced pursuant to a Motion for Change of Judge.[1] Counsel for Ironshore also stated that the Motion to Sever had been renoticed before the new judge (Judge Barkowitz), and was set to be presented in early September. Counsel for Ironshore explained that the motion would likely be taken under advisement in early September because Judge Barkowitz had not yet familiarized himself with the Gaston Lawsuit. In light of these developments, the Court set a new status date for October 10, 2012.

The October 10 status hearing was equally uneventful. Counsel for the Defendants informed the Court that a second Motion for Change of Judge had been filed in the Gaston Lawsuit by a different party and that the case was now before a third judge (Judge Tailor). The Court maintained its stay on these proceedings and set a status hearing for November 7, 2012.

---

[1] Under Illinois law, each party in a civil action is "entitled to one substitution of judge without cause as a matter of right." 735 ILCS 5/2-1001(a)(2)(i).

On November 7, the parties informed the Court that Ironshore's Motion to Sever would be heard by Judge Tailor on December 13, 2012. Counsel for Ironshore also conveyed that by December 13, Ironshore's Motion to Dismiss the Third Party Complaint in the Gaston Lawsuit would also be fully briefed. Counsel for Ironshore stated further that Ironshore planned to file a stipulation stating that it did not intend to raise certain defenses with respect to the claims against it in the Gaston Lawsuit. According to Ironshore's counsel, this stipulation would lead to the dismissal of the insurance broker (presumable Richmond) as a defendant, the only party preventing complete diversity and removal of the Third Party Complaint to federal court. Ironshore's counsel also informed the Court that complete diversity would result in the event that its Motion to Sever was granted. Based on these representations, the Court set a new status date for December 17, 2012.

At the December 17 status hearing, Ironshore stated that its Motion to Sever in the Gaston Lawsuit had been denied, and that its Motion to Dismiss, which was now fully briefed, would be heard in January. Ironshore's counsel also informed the Court that it had submitted an affidavit in the state court proceeding to the same effect as the stipulation discussed at the November 7 status hearing. Ironshore's counsel explained that the Third Party Complaint against it in State Court would become removable to federal court once the insurance broker was dismissed. Defendants' counsel responded by stating that it believed there was no basis for the stipulation, and that in any case the Third Party Complaint was not susceptible to removal because it was part of the larger Gaston Lawsuit. At the conclusion of the December 17 status hearing, the Court lifted its stay on these proceedings and informed the party that it would issue a ruling on whether this Court should stay or dismiss this case pursuant to the doctrine of *Colorado River* abstention.

**DISCUSSION**

Generally speaking, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641 at 645 (7th Cir. 2011) (quoting *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976)). In *Colorado River*, the United States Supreme Court "create[d] a narrow exception to that rule, allowing federal courts in some exceptional cases to defer to a concurrent state-court case as a matter of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Id.* (quoting *Colorado River*, 424 U.S. at 817). Courts engage in a two-part inquiry when determining whether abstention under the *Colorado River* doctrine is appropriate. *Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 754 (7th Cir. 2006)). First, the Court must decide whether the two suits are "parallel." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011). Assuming the cases are parallel, the district court must then consider "whether exceptional circumstances justify abstention.[2]" *Tyrer*, 456 F.3d at 751; *Adkins*, 644 F.3d at 500.

The *Colorado River* framework favors abstention in this case. Ironshore's federal declaratory judgment action and the Third Party Complaint in the Gaston Lawsuit involve substantially the same parties contemporaneously litigating substantially the same issues in two

---

[2] The Seventh Circuit has identified 10 nonexclusive factors that a district court should weigh in deciding whether to abstain under the *Colorado River* doctrine. *Adkins*, 644 F.3d at 500-01. These factors are:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence of absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious and contrived nature of the federal claim.

*Id.* (quoting *Tyrer*, 456 F.3d at 754).

different forums. *See Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (defining "parallel litigation"). Furthermore, it is likely that the state litigation will dispose of all claims presented in Ironshore's federal case. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498 (7th Cir. 2011)). Additionally, a majority of the "exceptional circumstances" factors – including the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained by the concurrent forums, the source of governing law, state or federal, the adequacy of state-court action to protect the federal plaintiff's rights, the relative progress of state and federal proceedings, and the presence of absence of concurrent jurisdiction – all counsel in favor of abstention.

However, the Court need not resort to the *Colorado River* doctrine here. The Seventh Circuit has explained that "[t]he decision to stay an action under the Declaratory Judgment Act does not require the court to reach for a judicially-created abstention doctrine. Rather, the Act itself provides the district court with the necessary discretion." *Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 378 (7th Cir. 2010).[3] That discretion allows the court to "determin[e] whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942)). Thus in determining whether to stay or dismiss a declaratory judgment action in the face of parallel state court proceedings, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial

---

[3] Despite its statutory underpinnings, the decision to stay or dismiss a federal declaratory judgment action is often referred to as "*Wilton/Brillhart* abstention," taking the name of the two cases from which the doctrine originated: *Wilton v. Seven Falls Co*, 515 U.S. 282-90, 286 (1995), and *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942). *See Hellman*, 610 F.3d at 378 (recognizing courts' use of the term "*Wilson/Brillart* abstention," but noting the term "is not entirely accurate, as ["abstention"] normally refers to a group of judicially-created doctrines"); *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010).

administration.⁴" *Id.* at 288.

In *Wilton*, the Supreme Court specifically rejected the argument that "exceptional circumstances" under the *Colorado River* doctrine must exist in order to justify abstention in a declaratory judgment action. *Id.* at 286 (reasoning that "[n]either *Colorado River*, which upheld the dismissal of federal proceedings, nor [*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)], which did not, dealt with actions brought under the Declaratory Judgment Act, 28 U.S.C. § 2201(a)."); *see also R.R. Street & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 714-15 (7th Cir. 2009). The Court explained that "[d]istinct features of the Declaratory Judgment Act … justify a standard vesting district courts with greater discretion in declaratory judgment actions than permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone* …" 515 U.S. at 283. The *Wilton* Court also relied on the text of the Declaratory Judgment Act itself, which provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration." *Id.* (citing 28 U.S.C. § 2201(a) (adding emphasis)). This "textual commitment to discretion, and the breadth of leeway [the Court has] always understood it to suggest, distinguish[es] the declaratory judgment context from other areas of law in which concepts of discretion surface." *Id.* at 286-87 (citations omitted); *see also Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 984 (7th Cir. 2010) (noting that *Wilton/Brillhart* discretion arises from the text of the Declaratory Judgment Act itself). Thus, " 'there is … nothing automatic or obligatory about the assumption of jurisdiction by a federal court' to hear a declaratory judgment action." *Id.* at 288 (quoting E.

---

⁴ The Court recognizes that "[e]ven if there is no parallel proceeding, the district court still has discretion to decline to hear a declaratory judgment suit." *Medical Assur. Co.*, 610 F.3d at 379 (citations omitted). However, the doctrine has been found to apply most often where a parallel case is pending in state court. *See, e.g., Nationwide Ins. Co. v. New United, Inc.*, No. 11-cv-3182, 2012 WL 1866358 (N.D. Ill. May 22, 2012); *Cincinnati Ins. Co. v. Silvestri Paving Co.*, No. 10 C 07971, 2011 WL 4686437, at *2 (N.D. Ill. Oct. 4, 2011)

Borchard, Declaratory Judgments, 313 (2d ed. 1941)). Courts in this Circuit consider the following factors in determining whether to abstain under *Wilton/Brillhart*:

> [W]hether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking declaratory judgment in another forum or at another time.

*Medical Assur. Co*, 610 F.3d at 379 (citing *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 695 (7th Cir. 1995)); *see also Hartford Cas. Ins. Co. v. Const. Builders in Motion, Inc.*, No. 11 C 7498, 2012 WL 645982, at *2 (N.D. Ill. Feb. 28, 2012) (applying *Zavalis* factors); *Ryan Intern. Airlines, Inc. v. East Trust SUB-2*, No. 10 C 50135, 2011 WL 893041, at *4 (N.D. Ill. Mar. 14, 2011) (same).

Under the *Zavalis* framework, Dismissal of Ironshore's federal declaratory judgment action is appropriate here. First, the suit before this Court does not present any questions that are distinct from the issues raised in the state court proceedings. Ironshore filed its Complaint seeking a declaration that it does not have a duty to defend and/or indemnify Defendants in connection with the Shareholders' Agreement and the subsequent Gaston and Zito Lawsuits. Although Defendants' Third Party Complaint in the Gaston Lawsuit takes the form of a breach of contract and bad faith claim, it is asking the court to resolve the rights and obligations of the parties under the same insurance policies at issue here. Thus both courts here are being asked to decide precisely the same legal issue: whether Ironshore owes Defendants a duty to indemnify it for any loss incurred in the Gaston and Zito Lawsuits. Such similarities virtually guarantee that both cases can be resolved by examining much of the same evidence. *See, e.g., Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 647 (finding that important to the determination is "whether both cases would be resolved by examining largely the same evidence") (citing *Fru-Con Constr.*

*Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 536 (8th Cir. 2009); *Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006)).

Second, every party to the action before this Court is also a party in the proceedings before the State Court. Thus both cases involve "substantially the same parties." The fact that additional parties are present in the Gaston Lawsuit is of little consequence here, as suits need not be identical to be parallel and the mere presence of additional parties or issues in one case will not necessarily bar a finding that cases are parallel. *See AAR Int'l, Inc. v. Nimelias Entr., S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). What is of consequence is the fact that every party in *this* case will have the opportunity to litigate the same claims in another forum. Also, the fact that the parties have taken (or found themselves in) different postures in the two proceedings does not change the analysis. In *Envision*, the Seventh Circuit stated specifically that the fact that the parties in the federal declaratory judgment case were part of a third-party suit in state court and not an original action did not affect whether the suits were parallel. 604 F.3d at 987 (citing *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005).

Third, allowing the declaratory judgment action before this Court to proceed further will not serve a useful purpose in clarifying the legal obligations and relationships among the parties. Rather, it will result in litigation that is duplicative of proceedings already taking place in state court. As discussed above, the issue Ironshore seeks to resolve before this court – whether it has a duty to indemnify Defendants for any loss incurred in the Gaston and Zito Lawsuits – will be resolved through litigation of the Third Party Complaint in the Gaston Lawsuit. Both cases also involve the same underlying set of facts, the same insurance policies, and each complaint seeks to apply and interpret the same section of those policies. Finally, comparable relief from the State Court is available to Ironshore. Not only will Ironshore be able to resolve the controversy

at issue here by litigating the Third Party Complaint in the Gaston Lawsuit, it may also bring a claim against Defendants under the Illinois Declaratory Judgment Act, 735 ILCS 5/2-701. *See TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005) (observing in the *Colorado River* context that "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state court] litigation will dispose of claims presented in the federal case.") (internal quotations omitted).

The *Zavalis* framework aside, the Seventh Circuit has made clear that the "classic example" of when abstention is proper occurs where, as here, "solely declaratory relief is sought and parallel state proceedings are ongoing." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). The law is clear that "at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in a state court, a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 282 (quoting *Brillhart*, 316 U.S. at 495 ("[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties")).

As this Court noted in its May 30 Opinion, the Seventh Circuit upheld the dismissal of a federal declaratory judgment action in a strikingly similar case. In *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, Envision, a wholesale insurance broker, sold health insurance policies provided by the defendant health insurance company, PreferredOne, to an insured that subsequently underwent two knee operations. 604 F.3d at 984. After taking a closer look at the insured's policy application, PreferredOne discovered that the insured had failed to disclose a preexisting condition. *Id.* at 985. On that basis, PreferredOne rescinded the policy and refused to

pay for the insured's second knee operation and subsequent hospital stay. *Id.* The insured sued PreferredOne in Minnesota state court for breach of contract, claiming that he answered all of the questions in the application truthfully and that he relied on Envision's agent to accurately complete the form. *Id.* PreferredOne filed a third-party complaint in the Minnesota action against Envision and its agent for indemnification for any adverse judgment in the suit filed by the insured. *Id.* Two days later, Envision, like Ironshore here, filed a declaratory judgment action against PreferredOne in federal court seeking a declaration that it had no duty to indemnify PreferredOne. *Id.* After filing its federal suit, Envision also filed a motion to dismiss the third-party complaint in the Minnesota case. *Id.* That motion was denied, and the Minnesota case was allowed to move forward. *Id.* The district court subsequently dismissed the federal declaratory judgment action under the *Wilton/Brillhart* abstention doctrine, finding that the two cases were parallel actions because they involved the same parties and presented the same legal issue: whether Envision owed PreferredOne a duty to indemnify. *Id.*

The Seventh Circuit upheld the district court's decision to dismiss the federal case, noting that the Supreme Court has made clear that the *Wilton/Brillhart* doctrine applies "in a diversity case where a declaratory judgment is sought and a parallel state proceeding also exists." *Envision*, 604 F.3d at 986 (citing *Wilton*, 515 U.S. at 283; *Provident Tradesmens Bk. & Tr. Co. v. Patterson*, 390 U.S. 102, 126 (1968)); *see also R.R. Street Co.*, 569 F.3d at 715 ("There is no doubt that a court may dismiss or stay an action under the *Wilton/Brillhart* abstention doctrine where solely declaratory relief is sought."). Because "the same precise legal question [was to] be answered in both suits: whether Envision owes PreferredOne a duty to indemnify it for any loss incurred in the [Insured's] suit," the court found the district court's decision to dismiss the federal case appropriate. *Id.* at 987.

The circumstances here are virtually identical to those in *Envision*. As described above, this Court's analysis under the *Zavalis* framework, the underlying facts, legal issues, and parties are either identical or substantially similar in both cases. As in *Envision*, both courts here are being asked to decide whether Ironshore owes Defendants a duty to indemnify it for any loss incurred in the Gaston and Zito Lawsuits. Accordingly, the Court finds it appropriate to exercise its discretion under the *Wilton/Brillhart* doctrine and abstain from proceeding further with this case.[5]

In its previous Opinion, this Court cited a provision in Section X, Paragraph O of the Policies as a basis for staying, as opposed to dismissing, this case. That provision states: "Nothing in this condition constitutes or shall be understood to constitute a waiver of right of the Insurer to commence an action in any court of competent jurisdiction within the United States, [or] to remove an action to a United States District Court." *See* Complaint, Ex. E, Section X(O). Because Ironshore may have been able to remove the Third Party Complaint to federal court in the event its Motion to Sever was granted, the Court determined that issuing a stay was the more prudent measure at the time because any case properly removed from the State Court could then be consolidated with the instant case and remain before this Court. However, because the State Court has since denied Ironshore's Motion to Sever, this Court sees no reason to issue another stay and sit idly while the same parties move forward to litigate the same issues in a different forum, or while Ironshore seeks other avenues to reach a federal forum.[6] Nor does it serve the

---

[5] In addition to determining whether proceedings are parallel, courts in this district have stated that "the Court must determine whether the non-declaratory claims are independent of the declaratory claims" when applying the *Wilton/Brillhart* doctrine. *Steadfast Ins. Co. v. Ballantine*, No. 12 C 2646, 2012 WL 5304207, at *2 (N.D. Ill. Oct. 25, 2012) (citing *R.R. Street & Co., Inc.*, 569 F.3d 711, 716-17 (7th Cir. 2009)). The Court need not engage in this second inquiry here, as Ironshore's Complaint does not contain any non-declaratory judgment claims.

[6] Based on representations made by Ironshore's counsel in open court, the state court action may become removable to federal court should the State Court dismiss Richmond, the only defendant in that case breaking complete

interests of judicial economy to proceed with a federal declaratory judgment action that involves the same underlying facts, insurance policies, legal issues, and parties as a case that has already begun to develop and is likely to remain in state court. Section X of the Policies makes clear that Ironshore has not waived its right to remove an action to federal court. However, this contractual provision cannot force the Court into sweeping the *Wilton/Brillhart* doctrine under the rug or overcome the Declaratory Judgment Act's "textual commitment to discretion." Accordingly, the Court finds dismissal under the *Wilton/Brillhart* doctrine appropriate in this case.

## CONCLUSION

For the reasons stated, Ironshore's Complaint for declaratory relief is dismissed

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 25, 2013

---

diversity.